1
2
3
4
5
6               UNITED STATES DISTRICT COURT
7                    DISTRICT OF NEVADA
8                           * * *
9   CHARLES H. HILL,                    Case No. 3:11-cv-00048-MMD-VPC
10                      Petitioner,                 ORDER
11      v.
12   JACK PALMER, et al.,
13                      Respondents.
14

15          This habeas matter under 28 U.S.C. § 2254 comes before the Court on

16   petitioner's counseled response to the Court's order to show cause as to why the

17   petition should not be dismissed as time-barred (dkt. no. 72). Respondents filed a reply

18   (dkt. no. 79). As discussed below, this petition must be dismissed as untimely.

19   **I.    BACKGROUND**

20          On June 4, 1985, pursuant to petitioner Charles H. Hill's guilty plea to first-degree

21   murder, the state district court sentenced him to life in prison without the possibility of

22   parole (dkt. no. 72, p. 2). The judgment of conviction was filed on June 19, 1985. *Id.*

23          On November 23, 1999, petitioner filed a motion for leave to proceed *in forma*

24   *pauperis*, an affidavit in support, a financial certificate, a notice of motion and motion for

25   transcripts at state expense, and a memorandum of points and authorities in support

26   (dkt. no. 80, Exhs. 2-6). Over five years later, on April 24, 2006, petitioner filed a NRS

27   213.020 notice for presentation of application for commutation of sentence; he filed a

28   similar motion on July 31, 2006. *Id.* at Exhs. 8, 9. On November 7, 2006, he filed a

motion for petition of court to grant court order. He filed a similar motion two days later, both asked for a copy of his PSI and that his PSI be corrected to reflect that he had only been on parole once as a juvenile and never as an adult. On December 5, 2006, the state district court denied his motion. *Id.* at Exhs. 10-12.

As discussed below, since that time, petitioner has steadily filed numerous motions in state court. He has also initiated several federal actions. *See, e.g.,* 3:07-cv-0035-ECR-VPC (dismissed on the basis that the type of relief sought was unclear, the Court directed the Clerk to send petitioner a blank Section 1983 form as well as a Section 2254 habeas form); 2:09-cv-0132-PMP-RJJ (the Court dismissed the Section 1983 action without prejudice for failure to file an application to proceed *in forma pauperis* or pay the filing fee). On January 19, 2011, petitioner mailed the instant federal petition for filing (dkt. no. 8).

## II.   LEGAL STANDARDS

The Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996 and imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d.) The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A.) Further, a properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2.)

A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2009) (quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary

exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Ignorance of the one-year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

With respect to equitable tolling due to mental impairment, the Ninth Circuit has set forth a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance . . . .

*Bills v. Clark*, 628 F.3d at 1099-1100 (9th Cir. 2010) (emphasis in original) (footnotes omitted); *see also Id.* at 1100-01.

## III.    INSTANT ACTION

In ground one of the federal petition, petitioner claims that his conviction and/or sentence violated his Fifth Amendment right to an impartial tribunal because at his initial sentencing hearing Parole & Probation ("P&P") admitted a PSI that contained false information about his past criminal record, which caused the court to follow P&P's recommendations (dkt. no. 8, p. 3). The false information was 1) that in Dallas County petitioner had two prior charges of aggravated assault with use of a deadly weapon; 2) ///

3

that petitioner was currently on parole; 3) that he had been on probation for DWI; and 4) that his birth name was an alias. *Id.*

In ground two, petitioner claims that his counsel rendered ineffective assistance because he 1) failed to challenge the false P&P report; 2) failed to investigate petitioner's claims that the report was defective; 3) failed to argue petitioner's defense and failed to inform the court that petitioner was schizophrenic; 4) failed to move for a new trial; 5) never forwarded the records of the sentencing hearing; and 6) failed to advise petitioner of his postconviction remedies. *Id.* at 5.

In ground three, petitioner claims that his Fourteenth Amendment right to a fundamentally fair trial was violated because the state courts did not provide him with sentencing hearing transcripts that he requested several times and needed to prove the claims in ground one and two. *Id.* at 7. Petitioner also stated in ground three that he is mentally ill and has been sedated during most of his incarceration at the Nevada Department of Corrections ("NDOC"). *Id.*

Petitioner's judgment of conviction was entered in June 1985. The AEDPA one-year limitation period commenced on April 24, 1996 and expired on April 24, 1997. Petitioner filed nothing in state court until November 23, 1999. In his counseled response to the order to show cause that the petition should not be dismissed as time-barred, petitioner explains that his mental health conditions date back to at least 1978 and that he has been diagnosed with Schizophrenia, Paranoid type, Anti-Social Personality Disorder, and Schizoaffective Disorder (dkt. no. 72, p. 3). NDOC medical staff has treated petitioner for his mental health issues throughout his incarceration. *Id.* He is on an extensive regimen of psychotropic and anti-depression medications. *Id.* Petitioner argues that he has been consistently in and out of mental health units and structured care units due to his mental impairments. *Id.*

Petitioner argues that he satisfies both requirements under *Bills v. Clark*. He argues that his heavy medications and his extensive history of mental impairment rendered him unable to "rationally or factually" discern the new AEDPA requirement to

4

timely file his petition and that his mental condition prevented him from personally preparing and filing a petition. *Id.* at 4-5. He argues that he meets the second prong because his heavy medications, inability to mentally cope with a basic daily routine, and transfers in and out of treatment units indicate that he lacked the knowledge of or mental capacity to act on the AEDPA filing deadline, which went into effect about eleven years after his incarceration commenced. He also states that his circumstances were extraordinary and that under the totality of the circumstances surrounding his mental health and treatment, the *Bills* test is met. *Id.* at 6.

Respondents argue that petitioner has failed to point to any specific evidence whatsoever that his mental impairment entitles him to equitable tolling of all but one year of the more than thirteen year period between April 24, 1996 and January 19, 2011, the date petitioner mailed the instant federal petition for filing (dkt. no. 79, p. 10). They contend that the fact that petitioner suffers from mental illness in and of itself does not prove that he lacked the ability to timely file a federal petition. *Id.* at 11. They point out that beginning in April 2006, petitioner has consistently filed "imperfect but understandable" pleadings in state and federal court. *Id.*

This Court specifically directed petitioner to detail to the best of his ability all time periods between April 24, 1996 and January 19, 2011 during which his mental illness or other circumstances impaired his ability to file his federal habeas petition (dkt. no. 40, p. 5). The Court made clear that all assertions of fact must be detailed, specific as to time and place, and supported by competent evidence and that the Court will not consider any assertions that are not specific as to time and place, are not made pursuant to a declaration under perjury based upon personal knowledge, and/or that are not supported by competent evidence. *Id.*

Petitioner's response to the show-cause order states generally that his history of mental illness and extensive treatment entitle him to equitable tolling. Petitioner lists the definitions and typical symptoms of his disorders (dkt. no. 72, p. 3). He argues, without specific citation to his medical records, that he has been consistently in and out of

mental health and structured care units throughout his time in the NDOC. *Id.* at 5. He states that he was transferred from Southern Desert Correctional Center ("SDCC") to Northern Nevada Correctional Center ("NNCC") for (unspecified) medical treatment approximately twenty-four times over the twenty-two years he was housed at SDCC. *Id.* He was either in the infirmary or the mental health unit about nine times during the three years he was a High Desert State Prison ("HDSP"). *Id.* He has been housed at NNCC since 2010 and in about the first three years he was in the mental health unit, infirmary, or structured care unit about seven times. *Id.*

Despite the Court's clear directive, petitioner provides no details beyond these statistics. Moreover, combining infirmary visits–which could (and, from the Court's review of the medical records, appear to) include other medical issues–the significance of the total number of medical incidents or visits is unclear at best. Petitioner cites to a September 2006 memorandum by his former psychologist for the proposition that petitioner was "unable to perform mental tasks" in 1994 (dkt. no. 75-4, p. 72). First, petitioner's mental state in 1994 is not directly relevant to whether his level of mental impairment should entitle him to equitable tolling for any part of the time period from April 1996 to January 2011. Second, the memo, which states that in the fall of 1994 petitioner was on heavy doses of psychotropic medication that left him "unable to perform mental tasks necessary to complete schoolwork," was directed to Community College of Southern Nevada personnel and apparently written in relation to a subsequent determination regarding petitioner's financial aid eligibility (which suggests petitioner was later able to resume his studies).

In the only detailed references that are specific to time and place in the response, petitioner states that, of thirty pages of medical progress notes from April 2, 1996 through December 6, 1997, twenty pages are notes from the mental health unit (dkt. no. 72, p. 6). While some notes do appear to indeed be from the mental health unit, it is unclear to the court how to discern in general which notes reflect that petitioner was in the mental health unit at the time the note was written. The Court agrees with petitioner

that the medical records reflect that from about April 11-24, 1997 petitioner was in mental health seclusion for the safety of himself and others (dkt. no. 75-5). Indeed, from about April - June 1997, the records appear to reflect significant mental health issues, though there is nothing in the medical records that really explains to what degree petitioner's general or overall functioning was impaired at that time. The overall tenor of the notes from 1996 and 1997, however, is positive, apparently indicating that petitioner was doing well overall. *See, e.g.*, dkt. no. 75-4, p. 101 - March 1996, "stable, resumed work in culinary;" p. 105 - July 1996, "stable for months;" p. 99 - October - December 1996, "doing well;" p. 71 - February 1997 - "stable, interacts appropriately;" p. 85 - "denies hallucinations, ideations;" p. 83 - July 1997, "oriented to place and time;" p. 76 - August 1997, "helpful on unit, interacts with peers and staff, cooperative;" p. 78 "compliant, cooperative, cheerful;" p. 75 - September 1997, "'feeling better,' denies hallucinations."[1]

The record reflects that petitioner has significant mental health issues and has been on extensive regimens of medications throughout his incarceration with the NDOC. However, nothing in the records provided demonstrates that his mental impairment was so severe that he was unable to rationally or factually understand the need to timely file, or unable to personally prepare and file a habeas petition and that it caused it to be impossible for him to meet the filing deadline. And, in fact, his progress notes tend to reflect that, while suffering mental illness, petitioner was not incapacitated or incapable of functioning day-to-day. For example, the notes include much discussion about the need to educate petitioner further about his diabetes so that he would make better diet choices and also reflect that he worked in culinary. There are times when petitioner reports sleep problems and agitation (*See* dkt. no. 75-4, p. 88, referring to

---

[1] *See also*, dkt. no. 75-2, pp. 1-4, notes from his mental health treatment plan appear to reflect periods that he was in structured units with the goal of programming in general population, but also state the following- April 2003 - "psychosis in remission," "strengths: personable, jovial, motivated to work;" November 2001 - "Friendly, sense of humor;" February 2001 - "friendly, good sense of humor;" January 2000 - "cooperative, compliant."

June 1997), and it appears that in 2000 and 2001 he had about three instances where he was placed in the mental health unit for the protection of himself and others. Dkt. no. 75-3, pp. 92-95, 102, 103; dkt. no. 75-4, pp. 7-8. Even assuming, *arguendo*, that the about two-week period in April 1997 that he was in mental health seclusion and some periods of time between 2000 and 2001 should be tolled, those two time periods alone simply cannot account for a thirteen-year delay. Moreover, more common in the medical records are notes stating that he was stable, cooperative, compliant with his medication, intelligent, articulate, and that he interacted appropriately with staff and peers. *See, e.g.*, dkt. no. 75-4, pp. 74-76, 78, 81, 83, 85, 88, 99, 101, 105.

Further, the Court considers petitioner's medical records in conjunction with his rather prolific *pro se* filings, particularly in state court. In April 2006, in his motion for presentation of application for commutation of sentence, petitioner took responsibility for the murder and apologized, stated that he will continue to address and take care of the realities of his diagnosed mental and physical conditions, and that he intended to relocate to Philadelphia and be a working, tax-paying, law-abiding member of society if released (dkt. no. 80-1, p. 22). He discussed that in 2003 his case worker told him that he was not a management problem and pointed out that he had had only two write-ups in nineteen years. *Id.* at 23. A July 2006 filing is similarly lucid and expressed remorse (*see* dkt. no. 80-1, p. 29). He stated that he suffered mental illness and from 1984 on he suffered occasional "grave delusions of audio hallucinations." *Id.* He stated that currently (2006) he accepted treatment, including medicine and counseling and that he was in remission. *Id.* Petitioner includes an October 2005 NDOC memo from Harland Embree, his treating psychologist, to the Parole Board, that states that Embree contacted a mental health services specialist in Philadelphia who was willing to work with Embree to develop a release plan for petitioner in the Philadelphia area (including housing and outpatient mental health services) if petitioner was granted a commutation. *Id.* at 33.

///

1    In November 2006, petitioner filed a motion for petition of court to grant court

2   order (dkt. no. 80-1, p. 36). In it he argues that his PSI had some of the errors that he

3   sets forth in ground 1 of his instant federal petition, including that it erroneously stated

4   that he was on parole at the time he was sentenced for the Las Vegas murder (dkt. no.

5   80-1, p. 37). He also notes in a June 2007 motion for rehearing to correct pre-sentence

6   report that his delay of more than twenty (20) years was due to his status as an indigent

7   inmate and the court's refusal to produce transcripts (dkt. no. 80-1, p. 50). In another

8   June 2007 filing, he references that he asked his public defender in 1985 for transcripts

9   and also notes that the state district court denied a motion for transcripts in 2000 (dkt.

10  no. 80-1, pp. 73-74). In a September 2007 letter to the Chief Justice of the Nevada

11  Supreme Court, petitioner notes that the inmate law clerks are not helpful and usually

12  are working on their own case and states that the when he needs legal research he

13  does it himself and learns as he goes (dkt. no. 80-2, pp. 31-32). *See also* dkt. no. 80-2,

14  pp. 48-50, notice of motion for application of commutation of sentence; dkt. no. 80-2, pp.

15  52, 58, 60-61.

16    Moreover, plaintiff has filed at least three *pro se* actions with this Court against

17  NDOC defendants as well as pharmaceutical company defendants alleging that he was

18  forced to take psychotropic and blood pressure medications that caused his diabetes.

19  *See, e.g.*, 3:11-cv-00678-LRH-WGC; 3:13-cv-00291-RCJ-WGC; 3:14-cv-00388-MMD-

20  WGC. The Court agrees with respondents' general characterization of petitioner's

21  numerous filings over the years as imperfect but understandable. The Court also notes

22  that the claims that petitioner now raises in this federal petition are substantially the

23  same as he has raised for many years in state court. This consistency further

24  undermines the argument that petitioner has been so incapacitated for almost thirteen

25  (13) years so as to be incapable of timely filing a habeas petition. The content of

26  petitioner's numerous filings and attempted *pro se* filings in *this* matter do not suggest a

27  litigant who lacks mental capacity to pursue an action. *See, e.g., Ofeldt v. Director*,

28  NDOC, 2013 WL 3428006 *6 (D.Nev.2013) (petitioner "does not suggest that he was so

9

1   mentally disturbed or out-of-touch with reality that he was unable to discuss his case

2   with others or research potential issues in the law library"). Finally, petitioner does not

3   allege that there has been change of circumstances — such as that his medication has

4   been changed, or that his condition has otherwise stabilized — that would account for

5   petitioner only more recently having the mental capacity to understand and participate in

6   litigation. Nor do the medical records reflect such a change.[2]

7          Having carefully reviewed the briefing on the show-cause order and the exhibits

8   filed by petitioner and respondents, the court concludes that petitioner has not met his

9   burden to demonstrate that extraordinary circumstances beyond his control — that

10  either he was unable rationally or factually to personally understand the need to timely

11  file, or his mental state rendered him unable to personally prepare a habeas petition and

12  effectuate its filing — and that he diligently pursued the claims to the extent that he

13  could understand them, but that the mental impairment made it impossible to meet the

14  filing deadline under the totality of the circumstances. Accordingly, petitioner has not

15  met his burden under the two-part test laid out in *Bills*.

16  **IV.    CERTIFICATE OF APPEALABILITY**

17         In order to proceed with an appeal, petitioner must receive a certificate of

18  appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v.*

19  *Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236

20  F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial

21  showing of the denial of a constitutional right" to warrant a certificate of appealability.

22  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The

23  petitioner must demonstrate that reasonable jurists would find the district court's

24  assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529

25  U.S. at 484.) In order to meet this threshold inquiry, the petitioner has the burden of

26

27          [2]Again, this excepts the periods in 1996 and 2000 that the Court discussed
    previously when a significant question may have existed as to petitioner's mental
28  capacity.

demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* Pursuant to Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that the question of whether petitioner is entitled to equitable tolling of the statute of limitations due to petitioner's mental health issues meets the standard. The Court will therefore grant petitioner a certificate of appealability on that issue.

## V.   CONCLUSION

It is therefore ordered that the petition (dkt. no. 8) is dismissed as untimely.

It is further ordered that all other pending motions (dkt. nos. 97, 100, 104, 105, 107, 108, 109, 110, 111, 113, 114, 115) are denied as moot.

It is further ordered that a certificate of appealability is granted on the issue of whether petitioner is entitled to equitable tolling of the statute of limitations.

DATED THIS 22nd day of December 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE